**FILED**
July 20, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: KG
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| ENCORE PIPE & CONSTRUCTION, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | **7:26-cv-00195-DC-DCG** |
| | § | |
| TRUCOMP PIPE, LLC, | § | **JURY TRIAL DEMANDED** |
| *Defendant.* | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Encore Pipe & Construction, LLC ("Encore" or "Plaintiff") files this First Amended Complaint against Defendant TruComp Pipe, LLC ("TruComp" or "Defendant").

**I.**

**PARTIES**

1. Plaintiff, Encore Pipe & Construction, LLC, is a Texas limited liability company with its principal office located in Midland, Midland County, Texas. Encore does business and operates within the Western District of West Texas. All pleas, pleadings, motions, discovery, and other matters related in whole or in part to this case should be served upon Plaintiff's attorneys, B. Blue Hyatt and Jackson Willingham, at the law firm of Lynch, Chappell, & Alsup, P.C., 300 N. Marienfeld, Suite 700, Midland, Texas 79701.

2. Defendant, TruComp Pipe, LLC, is a foreign limited liability company with its principal office located in Ottawa, Franklin County, Kansas. Defendant conducts business in the Western District of West Texas. TruComp has been served with process and has appeared in this action.

## II.

## JURISDICTION & VENUE

3. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 as this matter in controversy exceeds the sum value of $75,000.00, the Plaintiff is a Texas limited liability company with its principal office located in Texas, and Defendant is a Kansas limited liability company with its principal office located in Kansas.

4. This Court has personal jurisdiction over Defendant because the causes of action arose within this district as a result of Defendant's conduct within this district. This Court's exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

5. Venue is proper in the Western District of Texas, Midland-Odessa Division pursuant to 28 U.S.C. § 1391(b) because, as more fully stated below, this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

## III.

## FACTS

6. Encore provides construction services in the Permian and Delaware Basin in Texas and New Mexico and is in the business of constructing oil and gas gathering systems, saltwater disposal systems, water transfer systems, fabrication, flowlines, and turnkey construction.

7. In or around January 2023, and subsequently in or around February 2025, Encore was hired by Discovery Operating, Inc. ("Discovery") to construct and install pipelines on certain properties on which Discovery conducted oil and gas operations. As part of these projects, Encore purchased pipe and other materials from TruComp, a merchant dealing in and selling the purchased pipe and materials, for installation on the Discovery pipeline projects.

8. Encore made TruComp fully aware of the specific intended use of the pipe on each project and the required specifications and pressure requirements needed for the pipe and other materials to be used, and the particular purpose intended for such pipe and materials. During communications between the parties in January 2023, TruComp provided materials to Encore which discussed and represented the characteristics and quality of TruComp's pipe (which TruComp calls "TC3-500" or "TC4-500", indicating 3-inch or 4-inch pipe with a pressure rating of 500 psi)—and made oral and written representations and warranties regarding the quality and characteristics of the pipe which were relied on by Encore in its decision to select TruComp as the materials supplier and made the basis of its bargain with TruComp. Specifically, but not by way of limitation, in the materials provided by TruComp to Encore during its sales pitch to Encore, and in its communications with Encore representatives, TruComp represented and warranted that the pipe fully complied with the applicable API specifications and industry standards and that the pipe could withstand operating pressures of 500 psi.

9. As part of the first project for Discovery (the "2023 Project"), Encore purchased 36,100 feet of pipe from TruComp in January 2023 for a total purchase price of $216,600.00. Encore agreed to pay and paid the contract price pursuant to the parties' agreement and any invoice(s) issued by TruComp. TruComp delivered the Pipe to Encore at the location. This transaction was broken into two invoices: Invoice No. 1003, dated January 17, 2023, in the amount of $108,312.00 for 18,052 feet of pipe; and Invoice No. 1004, dated January 19, 2023, in the amount of $108,288.00 for 18,048 feet of pipe. Encore paid to TruComp the total sum of $216,600.00 for pipe to be used on the 2023 Project.

10. During installation of TruComp's pipe on the 2023 Project, Encore discovered that the pipe failed to meet the requirements and specifications communicated to TruComp and failed

to meet the representations made by TruComp as to the quality and characteristics of the pipe Encore believed it was purchasing. Specifically, but not limited to this, the pipe sold by TruComp failed under normal testing and under normal operating conditions at less than 500 psi. As a result of this pipe failure, Encore, at its expense, had to completely replace the pipe with a product acceptable to Discovery. Encore timely notified TruComp of this breach of representations and warranties. TruComp promised to refund the $216,000.00 purchase price which Encore had paid. TruComp has failed and refused to reimburse Encore the $216,600.00.

11. The second project for Discovery commenced in February 2025 (the "2025 Project"). The 2025 Project involved the installation of a pipeline on Discovery's "Happy Tracks Lease," and additionally a pipeline related to operations on Discovery's "JW 9 Pad #2." Again, Encore made TruComp fully aware of the specific intended use of the pipe on each project and the required specifications and pressure requirements needed for the pipe and other materials to be used, and the particular purpose intended for such pipe and materials. Prior to the commencement of the 2025 Project, and in response to the issues with its defective pipe encountered on the 2023 Project, TruComp represented to Encore that it had completed all necessary research and development and made the necessary adjustments to its pipe so that the pipe would meet all requirements for the 2025 Project and agreed that it would reimburse Encore the $216,600.00 Encore had paid it for the pipe on the 2023 Project. During communications between the parties in January 2023, TruComp provided materials to Encore which discussed and represented the characteristics and quality of TruComp's pipe (TC4-500) and made oral and written representations and warranties regarding the quality and characteristics of the pipe which were relied on by Encore in its decision to select TruComp as the materials supplier for the 2025 Project and which were made the basis of its bargain with TruComp. Specifically, but not by way of

limitation, in the materials provided by TruComp to Encore during its sales pitch to Encore, and in its communications with Encore representatives, TruComp represented and warranted that the pipe was fully complied with applicable API specifications and industry standards and that the pipe could withstand operating pressures of 500 psi. The parties made an agreement whereby TruComp would provide pipe and materials for an agreed-upon price. TruComp delivered the Pipe to Encore at the location. TruComp submitted Invoices Nos 1015 and 1018, dated February 12, 2025, in the amounts of $98,564.00 and $2,050.00 respectively for pipe, couplings and connection materials. Encore paid TruComp the total amount of $100,614.00 for these products to be used on the Happy Tracks Lease.

12. During and after installation of TruComp's pipe on the 2025 Project, Encore discovered that the pipe failed to meet the requirements and specifications communicated to TruComp and failed to meet the representations made by TruComp as to the quality and characteristics of the pipe Encore believed it was purchasing. Specifically, but not limited to this, the pipe sold by TruComp failed under normal testing and under normal operating conditions at less than 500 psi. TruComp's pipe failed numerous pressure tests and was defective. The failures were not only at the pipe connections but were in the centers of the pipe joints. Encore, exerted considerable time and money to go joint-by-joint replacing faulty segments until a successful pressure test could be completed. Encore timely notified TruComp of this breach of representations and warranties. TruComp has failed and refused to refund to Encore the sum of $100,614.00 paid by Encore.

13. The parties made a similar agreement for pipe to be sold to Encore for use on Discovery's JW 9 Pad #2. The parties made an agreement whereby TruComp would provide pipe and materials to Encore for an agreed-upon price. TruComp delivered the pipe to Encore at the

location. The pipe failed multiple pressure tests and was defective. Encore timely notified TruComp of this breach of representations and warranties. Like it did on the Happy Tracks Lease, Encore attempted to remedy the situation by replacing faulty segments with additional pipe. However, after numerous attempts, Encore could not get a full string of TruComp pipe to pass a pressure test. Accordingly, Encore had no other option on the JW 9 Pad #2 project but to entirely replace TruComp's pipe with third-party pipe capable of meeting the requirements of the project.

14. During this replacement process, it was necessary to replace a segment of the JW 9 Pad #2 that crossed the Happy Tracks Lease pipeline. When Encore uncovered the Happy Tracks Lease pipeline during this process, it discovered that the Happy Tracks Lease pipeline (comprised of TruComp's pipe) had expanded and was bubbling. It was completely defective and, as a result of this finding, Encore also had to entirely replace the Happy Tracks Lease pipeline with third-party pipe. Encore timely notified TruComp of this breach of representations and warranties.

15. As a direct result of the defects encounter in the pipe sold to it on the Happy Tracks Lease and JW 9 Pad #2, Encore was required to incur remediation costs necessary to remedy the damages caused by the defective pipe in at least the amount of $733,195.14, which was a reasonable and necessary sum in the place and at the time the expenses were incurred.

16. As shown above, Encore and TruComp entered into agreements whereby Encore purchased from TruComp certain pipe products described as TC3-500 and TC4-500, which were represented and warranted to be able to withstand pressures up 500 psi and would be suitable for Encore's intended use of the pipe, of which TruComp was aware. As part of the agreement, TruComp represented and warranted that the pipe conformed to these contract specifications, industry standards for this type of pipe and use, and the specific representations that the pipe

complied with applicable API specifications, that it would withstand pressures up 500 psi, and would be suitable for Encore's intended use of the pipe on the three projects outlined above.

17. TruComp delivered the pipe to Encore at the locations described on or about dates described. Encore paid or agreed to pay the contract prices shown above pursuant to the parties' agreement and any invoice(s) issued by TruComp.

18. In reasonable reliance on TruComp's representations and warranties, Encore properly installed the pipe at the three projects in accordance with standard installation practices and in accordance with the specifications and requirements provided.

19. During installation and operations, Encore discovered that the pipe failed and was defective and did not comply with the agreements of the parties.

20. As a direct result of the defects in the pipe and connections, Encore experienced failures and performance issues at the projects including, but not limited to system shutdowns, leaks, downtime, excavation costs, and other remediation costs, causing substantial damages.

21. There was a complete lack of consideration for the pipe as it was worthless and not in compliance with the agreements of the parties. Encore timely provided TruComp with notice of breach and defects in the pipe and has demanded that TruComp refund the money paid by Encore to it by, and pay for its damages set forth above. Despite notice and opportunity to cure, TruComp failed and refused to adequately remedy the defects or compensate Encore.

22. Encore has complied with all contractual obligations, or such obligations are excused by TruComp's prior material breaches. All conditions precedent to Encore's claims have occurred, been performed, or have been waived. Alternatively, Encore stands ready, willing, and able to perform any remaining conditions precedent to the extent not excused.

**IV.**

## CAUSES OF ACTION

### A. BREACH OF CONTRACT

23. Encore hereby incorporates and re-alleges the matters set forth in the preceding paragraphs as if fully set forth herein.

24. Encore and TruComp entered into valid, enforceable contracts for the sale and delivery of the pipe on the terms described above.

25. Encore performed or was excused from performing its obligations under the contract, including payment for the pipe.

26. TruComp breached the contract by supplying pipe that failed to conform to the parties' agreed specifications and quality requirements and by failing to repair, replace, or refund the nonconforming goods after notice and opportunity to cure.

27. TruComp's breaches proximately caused Encore injury and damages.

### B. BREACH OF EXPRESS WARRANTY

28. Encore hereby incorporates and re-alleges the matters set forth in the preceding paragraphs as if fully set forth herein.

29. TruComp made express warranties to Encore regarding the nature, quality, characteristics, conformity, and performance of the pipe (TC3-500 and TC4-500), including affirmations of fact, descriptions, samples, models, specifications, and/or written warranties contained in its proposals, quotations, certificates, labeling, or invoices, which became part of the basis of the bargain.

30. The pipe did not conform to TruComp's express warranties at the time of delivery and installation.

31. In all instances described above, the pipe delivered to Encore by TruComp was faulty

and defective.

32. TruComp made affirmations of fact and promises regarding the pipe's pressure specifications and qualities as part of the basis of its bargain with Encore and made express warranties which were breached. TruComp's description of the pipe was made part of the basis of the bargain and created an express warranty that the goods conformed to that description. The pipe's failures during pressure testing demonstrates it did not conform to the specifications described, constituting a breach of express warranties.

33. When Encore decided to use TruComp as a supplier for the projects, TruComp not only represented that its pipe would meet the requirements of the project, but it also represented that the pipe was "excellent" at high pressure and "the industry standard." TruComp made such representations with the intent and for the purpose of inducing Encore to select TruComp as the material vendor.

34. After the 2023 Project, and all of the associated failures, TruComp represented that it had completed all necessary research and development and made necessary adjustments to its pipe so that it would meet all of Encores requirements.

35. Encore reasonably believed and relied on TruComp's representations detailed above and they were part of the basis of the bargain between them.

36. TruComp's representations were false. The pipe was defective. It did not meet the specifications required, promised, warranted or represented.

37. Encore timely notified TruComp of the breach of express warranties. To the extent Encore initially accepted the pipe, the defects in the pipe substantially impaired the value of the pipe to Encore. Encore either accepted the pipe on the reasonable assumption TruComp would cure the defect, or the defect was not reasonably discoverable before acceptance. Therefore,

Encore rightfully revoked acceptance within a reasonable time of discovering the breach.

38. As a direct and proximate result of TruComp's breach of warranty, Encore has incurred direct, incidental, special and consequential damages. Additionally, Encore's goodwill and reputation in the industry has been severely damaged.

**B. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

39. Encore hereby incorporates and re-alleges the matters set forth in the preceding paragraphs as if fully set forth herein.

40. TruComp is a merchant with respect to goods of the kind at issue. An implied warranty of merchantability attached to the sale of the pipe. The pipe was not merchantable, and this implied warranty was breached.

41. The implied warranty of merchantability requires that goods must be fit for the ordinary purposes for which such goods are used. The pipe was not merchantable at the time of delivery in that it was not fit for the ordinary purposes for which such pipe is used, would not pass without objection in the trade, and failed to conform to affirmations or promises on the labeling or packaging.

42. Encore provided TruComp with timely notice of the breach. To the extent Encore initially accepted the pipe, the defects in the pipe substantially impaired the value of the pipe to Encore. Encore either accepted the pipe on the reasonable assumption TruComp would cure the defect, or the defect was not reasonably discoverable before acceptance. Therefore, Encore rightfully revoked acceptance within a reasonable time of discovering the breach.

43. TruComp's breach of the implied warranty of merchantability proximately caused Encore to incur direct, incidental, special and consequential damages. Additionally, Encore's goodwill and reputation in the industry has been severely damaged.

**C. BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

44. Encore hereby incorporates and re-alleges the matters set forth in the preceding paragraphs as if fully set forth herein.

45. At the time of contracting, TruComp had reason to know Encore's particular purpose for the pipe and that Encore was relying on TruComp's skill and judgment to select or furnish suitable goods.

46. Encore in fact relied on TruComp's skill and judgment in selecting the pipe for the particular purpose.

47. The pipe was not fit for that particular purpose at the time of delivery and installation.

48. Encore provided TruComp with timely notice of the breach. To the extent Encore initially accepted the pipe, the defects in the pipe substantially impaired the value of the pipe to Encore. Encore either accepted the pipe on the reasonable assumption TruComp would cure the defect, or the defect was not reasonably discoverable before acceptance. Therefore, Encore rightfully revoked acceptance within a reasonable time of discovering the breach.

49. TruComp's breach of the implied warranty of fitness proximately caused Encore to incur direct, incidental, special and consequential damages. Additionally, Encore's goodwill and reputation in the industry has been severely damaged.

**D. BREACH OF WARRANTY OF DESCRIPTION**

50. Encore hereby incorporates and re-alleges the matters set forth in the preceding paragraphs as if fully set forth herein.

51. The pipe did not conform to the promises and affirmations of fact made on the container or label. TruComp's labeling incorporated its written specifications that TC3-500 and

TC4-500 had certain qualities, including pressure capabilities and specifications, and the pipe's failure to meet those specifications constitute a breach of warranty.

52. Encore provided TruComp with timely notice of the breach. To the extent Encore initially accepted the pipe, the defects in the pipe substantially impaired the value of the pipe to Encore. Encore either accepted the pipe on the reasonable assumption TruComp would cure the defect, or the defect was not reasonably discoverable before acceptance. Therefore, Encore rightfully revoked acceptance within a reasonable time of discovering the breach.

53. TruComp's breach of this warranty proximately caused Encore to incur direct, incidental, special and and consequential damages. Additionally, Encore's goodwill and reputation in the industry has been severely damaged.

## V.

## DAMAGES

54. Encore hereby incorporates and re-alleges the matters set forth in the preceding paragraphs as if fully set forth herein.

55. As a direct and proximate result of TruComp's breaches, Encore has suffered damages within the jurisdictional limits of this Court, including:

a. Cost to inspect, remove, and replace the defective pipe, including labor, equipment, and materials, in an amount to be proven at trial.

b. Costs to repair collateral damage to systems, structures, or equipment impacted by the defective pipe, including remediation and restoration expenses, in an amount to be proven at trial.

c. Consequential damages reasonably foreseeable at the time of contracting, including downtime, delay, lost productivity, and impacts to the project scheduling, in an amount to be proven at trial.

d. Incidental damages, including expenses reasonably incurred in inspection, receipt, transportation, care, custody, cover, and other reasonable charges related to the defects and nonconformity of the pipe, in an amount to be proven at trial.

f. Cover damages associated with procuring conforming replacement goods, including price differentials and associated costs, in an amount to be proven at trial.

g. The amounts paid to TruComp for the defective pipe in the amount of $317,214.00. The pipe had zero value when sold to Encore.

h. The additional amount of $733,195.14 for costs incurred in attempting to remedy the damages caused by the defective pipe on the Happy Tracks Lease pipeline and JW 9 Pad #2.

h. Pre- and post-judgment interest as allowed by law.

i. Court costs and recoverable litigation expenses as allowed by law.

j. Attorney's fees to the extent permitted by applicable law for contract claims and any applicable statutory provisions.

## VI.

## ATTORNEY'S FEES

56. Encore seeks recovery of reasonable and necessary attorney's fees and expenses from TruComp any applicable provisions of Texas Civil Practice and Remedies Code and the Texas Business & Commerce Code, in amounts to be proven at trial. If presentment or demand is required, it has been made.

## VII.

## RELIEF SOUGHT

56. Encore respectfully prays for judgment against TruComp as follows:

a. All pleaded damages suffered by Encore;

b. Direct damages;

c. Consequential damages;

d. Incidental damages;

e. Reasonable and necessary attorney's fees and costs;

f. Pre-judgment and post-judgment interest;

g. Such other and further relief, at law or in equity, to which Encore may show itself justly and lawfully entitled.

h. Encore prays for general relief.

Respectfully submitted,

**LYNCH, CHAPPELL & ALSUP**
A Professional Corporation
300 North Marienfeld, Suite 700
Midland, Texas 79701
Telephone: 432/683-3351
Fax: 432/683-2587

By: */s/ B. Blue Hyatt*
B. Blue Hyatt
State Bar No. 24032452
byhatt@lcalawfirm.com
Steven C. Kiser
Texas Bar No. 11538550
skiser@lcalawfirm.com
Jackson Willingham
State Bar No. 24121204
jwillingham@lcalawfirm.com

**ATTORNEYS FOR PLAINTIFF ENCORE PIPE & CONSTRUCTION, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2026, the foregoing was served on all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Jackson Willingham*
Jackson Willingham